**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0000604**
**25-JAN-2013**
**10:08 AM**

NO. CAAP-11-0000604

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellant,
v.
DAYNE HENRY ALEKA GONSALVES,
a.k.a. Dayne Aleka Nakaahiki Kane Kanokaoli;
Poikauahi Apioalani, Defendant-Appellee
(Cr. Nos. 08-1-0036 and 08-1-0037)

and

STATE OF HAWAI'I, Plaintiff-Appellant,
v.
ROBERT PAUOLE PA, Defendant-Appellee
(Cr. Nos. 08-1-0271 and 08-1-0270)

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Foley and Leonard, JJ.)

Defendant-Appellee Dayne Gonsalves (Gonsalves) was charged by Plaintiff-Appellant State of Hawai'i (State) with several criminal offenses, including impersonating a law enforcement officer in the second degree (Impersonating an Officer), in violation of Hawaii Revised Statutes (HRS) § 710-1016.7 (1993).[1] As part of its evidence on the Impersonating an

_____

[1] HRS § 710-1016.7 provides, in relevant part:

**Impersonating a law enforcement officer in the second degree.** (1) A person commits the offense of impersonating a law

(continued...)

Officer charge, the State planned to introduce a badge it had seized from Gonsalves. However, prior to trial, the Circuit Court of the Fifth Circuit (Circuit Court)[2/] issued an order requiring the State to return the badge to Gonsalves. The State appeals from that order. As explained below, we vacate the Circuit Court's order requiring the return of the badge.

I.

Gonsalves was charged in District Court Case No. 5P107-1720 with: (1) obstructing, in violation of HRS § 711-1105(5)(1) (1993 & Supp. 2012); (2) simple trespass, in violation of HRS § 708-815 (1993); (3) obstructing government operations, in violation of HRS § 710-1010 (Supp. 2012); and (4) disorderly conduct, as a petty misdemeanor, in violation of HRS § 711-1101(1)(a) (Supp. 2012).

An arrest warrant for these charges was issued for Gonsalves. Gonsalves allegedly told officers of the Kaua'i Police Department (KPD) involved in executing the warrant that he was a Federal Marshall. Gonsalves also presented the officers with a badge with the words "HAWAII FEDERAL MARSHALL," the number 1, and "The Polynesian Kingdom of Atooi" printed on it. The KPD seized the badge as evidence. Gonsalves was subsequently charged with Impersonating an Officer based on his use of this badge in District Court Case No. 5P107-1967.

Gonsalves demanded a jury trial in both cases, and the cases were committed to the Circuit Court for jury trial as

---

[1/] (...continued)
enforcement officer in the second degree if, with intent to deceive, the person pretends to be a law enforcement officer.

HRS § 710-1000(13) (1993) defines the term "[l]aw enforcement officer" to mean:

> any public servant, whether employed by the State or subdivisions thereof or by the United States, vested by law with a duty to maintain public order or, to make arrests for offenses or to enforce the criminal laws, whether that duty extends to all offenses or is limited to a specific class of offenses[.]

[2/] The Honorable Kathleen N.A. Watanabe presided.

Criminal Nos. 08-1-36 and 08-1-37. On January 20, 2009, Criminal Nos. 08-1-36 and 08-1-37 were consolidated by stipulation of the parties.[3/] After numerous continuances, the parties entered into plea negotiations. Gonsalves's counsel and the Deputy Prosecuting Attorney (DPA) discussed the terms of a plea in which Gonsalves would plead no contest to the obstructing charge and be sentenced to a fine, with the State dismissing all other counts. The DPA, however, asserted that any plea agreement would be subject to approval of the Kaua'i Prosecuting Attorney. Subsequently, the State tendered a written plea offer to Gonsalves that contained the terms that had been discussed, but included an additional term which required Gonsalves to forfeit "all badges seized" to the KPD. Gonsalves refused to agree to this additional term.

On May 2, 2011, Gonsalves filed a "Motion to Strike Illegal Condition in Plea Offer and Then Enforce Plea Offer" (Motion to Enforce). In the Motion to Enforce, Gonsalves asserted that as a law enforcement officer in the Kingdom of Atooi, he had the right to possess a badge identifying himself as a Federal Marshall in the Kingdom of Atooi. Gonsalves requested that the Circuit Court strike the provision of the State's plea offer requiring him to surrender his badge as illegal, and then to "enforce the plea agreement between the parties."

The State opposed the Motion to Enforce. The State asserted that its plea offer included the condition that Gonsalves "forfeit the badge that is evidence in this case." The State argued that because Gonsalves rejected this condition, there was no meeting of the minds regarding the plea offer and no plea agreement to enforce. The State argued that Gonsalves could not "pick and choose" which conditions of a plea offer he wanted to accept and then bind the State to only those conditions.

---

[3/] Criminal Nos. 08-1-270 and 08-1-271, which contained charges against Robert Pauole Pa, were also consolidated with Criminal Nos. 08-1-36 and 08-1-37.

The Circuit Court held a hearing on Gonsalves's Motion to Enforce on July 13, 2011, and filed a written "Order Granting in Part, and Denying in Part, [Gonsalves's Motion to Enforce]" (Order Regarding Motion to Enforce) on August 4, 2011. The Circuit Court made the following findings in its Order Regarding Motion to Enforce:

> 1. The Court finds that there was "no meeting of the minds" between the parties in this case, and no acceptance of the State's April 25, 2011, written Plea Offer, therefore there was no plea agreement;
>
> 2. The Court finds that condition 4 of the State's April 25, 2011, written Plea Offer that states, "*[t]he Defendant agrees to forfeit all "badges" seized to the police department*", is illegal and against public policy.

(Emphasis and brackets in original.) Based on these findings, the Circuit Court granted in part and denied in part Gonsalves's Motion to Enforce. The Circuit Court further ordered that "the State shall return to the Defendant Dayne Gonsalves, prior to trial, the 'HAWAII FEDERAL MARSHALL 1; *The Polynesian Kingdom of Atooi*' badge." (Emphasis in orginal.)

The State filed a motion for reconsideration of the Circuit Court's decision.[4] The State described the circumstances surrounding Gonsalves's Impersonating an Officer charge as follows: Gonsalves told KPD officers that he had "just returned from the 'White House'" and had been sworn in as a "Hawai'i Federal Marshal[]" with the same arrest powers as KPD officers. While KPD officers were executing an arrest warrant on prior charges, Gonsalves again told the KPD officers that he was a "'Federal Marshall'" with authority that "superseded" that of the KPD, and Gonsalves opened a wallet and displayed "a very authentic appearing law enforcement badge that, in shape and size," was "very similar" to the badge being used by KPD officers. The State described the badge as follows:

---

[4] The State filed its motion for reconsideration after the Circuit Court issued its oral ruling at the July 13, 2011, hearing, but before the Circuit Court memorialized its ruling in the August 4, 2011, Order Regarding Motion to Enforce.

> The badge displayed by [Gonsalves] appears to be chrome finish, with black lettering, has a Bald Eagle (the symbol of the United States of America) with open wings on the top, and reads in large bold letters, *"HAWAII FEDERAL MARSHALL"*, with the number "1" on the bottom. In the interior of the badge (between the words "Federal" and "Marshall"[)], in very small lettering, it also states, ["]*The Polynesian Kingdom of Atooi*" wrapped around what appears to be the coat of arms of the Kindgom of Hawai'[i], (which, at a glance, is similar in appearance to the seal of the State of Hawai'i).

(Emphasis in original.)

The State argued that the badge was part of the State's proof on the Impersonating an Officer charge and was "material evidence for trial." The State requested that the Circuit Court reconsider its ruling which required the State to immediately return the badge.

The Circuit Court held a hearing on the State's motion for reconsideration on August 9, 2011, and denied the motion for reconsideration. The Circuit Court, however, stayed its order requiring return of the badge pending a pre-trial conference set for August 17, 2011. In the meantime, the State filed a notice of appeal from the Circuit Court's order requiring the return of the badge pursuant to HRS § 641-13(7) (Supp. 2012), which stays an order for the return of property pending appeal.

II.

On appeal, the State argues that the Circuit Court erred in ordering the pre-trial return of the badge seized from Gonsalves, which the State planned to use as evidence at trial. The State notes that Gonsalves did not request the return of the badge in his Motion to Enforce and thus the Circuit Court acted *sua sponte* in ordering the return of the badge. The State also asserts that the Circuit Court failed to consider the State's interest in retaining the badge as evidence for the upcoming trial. We conclude that the Circuit Court erred in ordering the pre-trial return of the badge.

At the time the Circuit Court ordered the pre-trial return of the badge, Hawai'i Rules of Penal Procedure (HRPP) Rule 41(e) (1999) provided:

5

(e) <u>A person aggrieved by an unlawful search and seizure</u> may move the court having jurisdiction to try the offense for the return of the property, or to suppress for use as evidence anything so obtained, or both. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial.

(Emphasis added.) Gonsalves did not contend that the State obtained his badge as the result of an unlawful search or seizure. Therefore, HRPP Rule 41(e) did not provide a basis for the Circuit Court's decision.

Prior to its amendment in 1989, the parallel Federal Rules of Criminal Procedure (FRCP) Rule 41(e), like HRPP Rule 41(e), had been limited to persons "aggrieved by an unlawful search and seizure." However, despite this limitation in the pre-1989 version of FRCP Rule 41(e), federal courts recognized that even property lawfully searched for and seized should be returned to its owner once the government no longer has a need to use it as evidence. <u>See</u> Advisory Comments Notes on FRCP Rule 41 (regarding the 1989 amendment to FRCP 41(e)). Similarly, in <u>State v. Brighter</u>, 1 Haw. App. 248, 252, 617 P.2d 1226, 1229 (1980), this court recognized that "a defendant has a right to property lawfully seized where the government no longer has reason for its retention."

In 1989, FRCP Rule 41(e) was amended to explicitly authorize persons whose property had been lawfully obtained to move for the return of their property. FRCP Rule 41(e), as amended, permitted persons "aggrieved by an unlawful search and seizure of property <u>or by the deprivation of property</u>" to move for the property's return. (Emphasis added.) The Advisory Committee Notes regarding the 1989 amendment to FRCP Rule 41(e) state as follows:

No standard is set forth in the rule to govern the determination of whether property should be returned to a person aggrieved either by an unlawful seizure or by deprivation of the property. The fourth amendment protects people from unreasonable seizures as well as unreasonable searches, <u>United States v. Place</u>, 462 U.S. 696, 701 (1983),

6

and reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property. If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable. But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable.

In 2011, the Hawai'i Supreme Court amended HRPP Rule 41(e), effective January 1, 2012, to incorporate the 1989 amendment to FRCP Rule 41(e), thereby permitting persons "aggrieved . . . by the deprivation of property" to move for its return.[5] Although not applicable at the time of the Circuit Court's decision, the 2012 amendment to HRPP Rule 41(e) is consistent with this court's decision in <u>Brighter</u>. We conclude that the 2012 amendment to HRPP Rule 41(e), the Advisory Committee Notes to the 1989 amendment to FRCP Rule 41(e), and the decisions construing the 1989 amendment to FRCP Rule 41(e) (which was subsequently redesignated as FRCP Rule 41(g)) are instructive.

Consistent with the Advisory Committee Notes to the 1989 amendment to FRCP Rule 41(e), we conclude that a trial court's decision on whether to order the return of lawfully obtained property must ultimately turn on the reasonableness of the request. As a general rule, the prosecution's retention of property is reasonable, and a defendant's motion for return of property should be denied, as long as the prosecution's "need for the property as evidence continues." <u>United States v. Van</u>

---

[5] HRPP Rule 41(e) was amended effective January 1, 2012 to provide as follows:

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move the court having jurisdiction to try the offense for the return of the property. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned unless otherwise subject to lawful detention, but the judge may impose reasonable conditions to protect access to the property and its use in later proceedings.

7

Cauwenberghe, 934 F.2d 1048, 1061 (9th Cir. 1991) (citing, United States v. Van Cauwenberghe, 827 F.2d 424, 433 (9th Cir. 1987). As set forth in the Advisory Committee Notes to the 1989 amendment to FRCP Rule 41(e), "[i]f the [government] has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable." However, "if the [goverment's] legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable."

In this case, Gonsalves did not move to suppress the badge, and the Circuit Court did not find that the badge had been unlawfully searched for or seized. The State asserts that it needs the badge as evidence and plans to introduce the badge at trial to prove the charge against Gonsalves for Impersonating an Officer. The State's description of the badge and the record supports the State's claim that the badge constitutes relevant and probative evidence of the Impersonating an Officer charge and that the State has a continuing need to retain the badge as evidence for trial. However, in ordering the State to return the badge before trial, the Circuit Court did not address the State's asserted need for the badge as evidence. The Circuit Court also did not address whether State's legitimate interests could be satisfied if the property were returned. Instead, the Circuit Court *sua sponte* ordered the return of the badge before trial. Under these circumstances, we conclude that the Circuit Court erred in ordering the pre-trial return of the badge to Gonsalves.

III.

We vacate the Circuit Court's order requiring the State to return the "'*HAWAII FEDERAL MARSHALL 1; The Polynesian Kingdom of Atooi*'" badge to Gonsalves prior to trial, which was set forth

in the Order Regarding Motion to Enforce.[6]  We remand the case for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, January 25, 2013.

On the briefs:

Tracy Murakami
Deputy Prosecuting Attorney
County of Kauai
for Plaintiff-Appellant

Daniel G. Hempey
(Hempey & Meyers LLP)
for Defendant-Appellee
DAYNE GONSALVES

*Craig H. Nakamura*
Chief Judge

*Daniel R. Foley*
Associate Judge

Associate Judge

---

[6] Because the State's appeal is pursuant to HRS § 641-13(7), which only authorized the State to appeal from the Circuit Court's pre-trial order for the return of property, we do not address the other aspects of the Circuit Court's Order Regarding Motion to Enforce.